# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 cv 10958 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| UNITED STATES IMMIGRATION AND | ) | |
| CITIZENSHIP SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe, filed a 13-count complaint, challenging the United States Immigration and Citizenship Service ("USCIS") decision denying her I-526 petition to obtain an EB-5 immigrant investor visa. The Court held oral arguments on the cross-motions for summary judgment on February 16, 2017. After considering all the arguments in the briefs and in court as well as the administrative record, this Court grants summary judgment in favor of USCIS [36] and denies summary judgment for Doe [37].

The Court will first address the issue of anonymity. Although plaintiff did not formally request to proceed anonymously, this Court will allow her to proceed under the pseudonym Jane Doe. While courts disfavor pseudonyms because the public has an interest in knowing what the judicial system is doing and who is availing themselves of the courts, the presumption that parties' identities are public information, can be rebutted by showing the harm to the plaintiff exceeds the likely harm from concealment. *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Courts have permitted the use of pseudonyms "to protect an individual from harassment, injury, ridicule, or personal embarrassment." *See, e.g., United States v. Doe,* 655 F.2d 920, 922 (9th Cir. 1980).

Here, Jane Doe is an Iranian national, who is seeking lawful entry to this country on an immigrant investor visa (EB-5) (Immigration and Nationality Act, as amended, § 203(b)(5), 8 U.S.C.

1

§ 1153(b)(5). She argues that her investment in America, while she is still in Iran, could be seen as against the interest of the Islamic Republic of Iran, jeopardizing her safety. Moreover, her identity is known to USCIS, which diminishes concern from concealment of her identity from the public. Accordingly, this Court will allow the pseudonym.

**Background**

Jane Doe filed an I-526 petition with USCIS, seeking EB-5 classification on her investment in the Elgin Assisted Living EB-5 Fund, LLC, on August 13, 2013. The fund or "EALEF," is a limited liability company consisting of 24 members seeking investor visas (EB-5 classification) based on investments of $500,000 each. They plan to pool their investment to fund an investment loan of $12 million to Elgin Memory Care, LLC, which was formed to develop, construct, and operate an assisted living facility in Elgin, Illinois.

The EB-5 program, 8 U.S.C. §1153(b)(5), is a visa classification for "employment creation" immigrants who invest a substantial amount of money (a least $1 million or, if in a "targeted employment area," $500,000), in a new or troubled commercial enterprise that benefits the United States economy and creates or sustains full-time employment for at least ten United States workers.

In order to obtain permanent residency through an EB-5 visa, the foreign investor must file a Form I-526, Immigrant Petition by Alien Entrepreneur ("I-526") with USCIS. 8 C.F.R. § 204.6(a). Upon receiving an I-526 petition, USCIS investigates the claims in the petition and the attached documentation to determine whether the petitioner qualifies for EB-5 visa classification. 8 U.S.C. § 1154(b). The petitioner always has the burden of demonstrating that she is qualified. 8 U.S.C. § 1361. If USCIS approves the petition, then the immigrant investor (and dependent family members) may apply for a visa at a U.S. consulate abroad or, if already in the U.S., apply for adjustment of status with USCIS. If the visa or status adjustment is granted, the immigrant investor has a two-year period of conditional residency. During the conditional residency, the investor must maintain their

investment of capital. 8 U.S.C. § 1186b(d)(1). Within 90 days of the end of this period the immigrant investor must petition USCIS to remove the conditional basis of his or her residency. 8 U.S.C. § 1186b(c)(1), (d)(2); 8 C.F.R. §216.6. The petition to remove the conditional status of the visa must demonstrate that his or her investment has "created or can be expected to create within a reasonable time ten full-time jobs for qualifying employees." 8 C.F.R. § 216.6(a)(4(iv).

To show that a new commercial enterprise will create the full time positions required for EB-5 classification, an immigrant investor must submit the following evidence with her I-526 petition:

> (A) Documentation consisting of photocopies of relevant tax records, Form I-9, or other similar documents for ten (10) qualifying employees, if such employees have already been hired following the establishment of the new commercial enterprise; or,
> (B) A copy of a comprehensive business plan showing that, due to the nature and projected size of the new commercial enterprise, the need for not fewer than ten (10) qualifying employees will result, including approximate dates, within the next two years, and when such employees will be hired.

8 C.F.R. § 204.6(j)(4)(i).

This two-year period in subsection (B) begins six months after the adjudication of the Form I-526. A comprehensive business plan submitted under this section should reasonably demonstrate that the investment will create the requisite number of jobs by the end of this two-year period.

Multiple immigrant investors may use the same commercial enterprise as the basis for EB-5 classification, so long as "each petitioning investor has invested or is actively in the process of investing the required amount of capital for the area in which the new commercial enterprise is principally doing business, and provided each individual investment results in the creation of at least ten full-time positions for qualifying employees." 8 C.F.R. § 204.6(g)(l).

If the investment is in a new commercial enterprise associated with a USCIS-approved regional center, his or her I-526 petition must be accompanied by evidence that his or her investment in the commercial enterprise will create full-time positions for not fewer than ten

3

persons either directly or indirectly through revenues generated from increased exports resulting from the Immigrant Investor Program. 8 C.F.R. § 204.6(j)(4)(iii), (m)(3), (7).

On August 13, 2013, Jane Doe filed her I-526 petition with USCIS. The petition set forth that Doe had invested $100,000 and would invest an additional $400,000 within 30 days of approval of her I-526 petition. In support of the petition, she provided a business plan for the investment project, Elgin Memory Care, LLC, and an Employment Impact Report for an assisted living facility in Elgin, Illinois, both dated August 2011. As of the filing of her petition, EALEF had all twenty-four members ready, with the exception of several outstanding visa petitions, to pool their investments for a loan to Elgin Memory Care, LLC, for the construction and operation of an assisted living facility in Elgin, Illinois.

The 2011 Business Plan projected Elgin Memory Care would complete the assisted living facility in time to commence operations in 2012. The 2011 Business Plan projected that Elgin Memory Care would be staffed by 37 full-time employees at the end of its first year of operations, by 73 full-time employees at the end of its second year of operation and by 87 employees by the end of its third year of operation.

The job creation estimates in the 2011 Employment Impact Report are largely premised on Elgin Memory Care's operation of the assisted living facility, and to a lesser extent, the funds Elgin Memory Care projects it will expend in constructing the facility. Specifically, the 2011 Employment Impact Report relies on staffing projections to calculate the number of indirect and induced jobs Elgin Memory Care will purportedly create by operating the assisted living facility in the first and second year of operation. The 2011 Employment Impact Report estimates that Elgin Memory Care will create 147 direct, indirect, and induced jobs by the end of the assisted living facility's first year of operation, another 30 direct, indirect, and induced jobs by the end of the facility's second year of

operation, and 95 indirect and induced jobs as a result of projected expenditures related to the construction of the assisted living facility.

The staffing projections relied on in the 2011 Employment Impact Report are different than in the 2011 Business Plan. The 2011 Employment Impact Report states that Elgin Memory Care will employ 73 full-time employees in its first full year of operations and 87 full-time employees in its second full year of operations. The 2011 Business Plan projected staffing at 37 full-time employees at the end of the first full year of operations and 73 full-time employees at the end of the second full year of operations and 87 employees by the end of the third full year of operations.

In March 2015, USCIS issued a Notice of Intent to Deny, informing petitioner Doe that the agency intended to deny her I-526 petition and giving her an opportunity to respond. The notice informed Doe that the record evidence failed to establish that her investment in EALEF would create at least ten full-time positions for qualifying employees. The government acknowledges that the notice erroneously states that Doe submitted a 2012 Business Plan and a 2013 Employment Impact Report with her I-526 Petition. The agency received these documents in connection with its adjudication of applications filed by other EB-5 petitioners that were part of the same EALEF investment group. In the notice, the agency acknowledged that it had previously approved I-526 petitions filed by other EALEF investors, but informed Doe that the 2012 Business Plan was unreliable, citing the significant delays in Elgin Memory Care's construction and operation. The agency declined to give any deference to the 2012 Business Plan or the 2013 Employment Impact Report because the facts on which those documents relied had materially changed.

The 2012 Business Plan projected that the assisted living facility would commence operations in 2014 – two years later than the 2011 Business Plan that Doe submitted with her I-526 petition. The agency learned through documentation submitted by other EALEF investors that Elgin Memory Care had only begun initial grading of the construction site in November 2014. The

5

construction schedule in the 2012 Business Plan was outdated and the project was significantly delayed. Because it did not appear as though Elgin Memory Care would complete construction within the timeframe required by 8 C.F.R. § 204.6(j)(4)(i)(B), the agency found Doe failed to "establish that [the project] will create at least ten full-time positions for qualifying employees as a result of [her] investment."

On April 13, 2015, Doe responded to the notice of intent to deny. She asserted that neither the 2012 Business Plan nor the 2013 Employment Impact Report were outdated when she submitted her I-526 petition and that subsequent delays to the project are "immaterial." Doe provided a new construction timeline, dated March 2, 2015, with an April 2016 date of operation. The updated construction timeline projected that work on the building's foundation would begin on March 30, 2015, and be complete by June 19, 2015. As of April 9, 2015, the City of Elgin had not issued any building permits authorizing construction on the site. Doe also provided several receipts and work orders reflecting ongoing progress on the project.

On August 26, 2015, the agency denied Doe's I-526 petition. The written denial letter provided two alternative grounds for denial. The pertinent one here is Doe's failure to provide evidence that her investment in EALEF will create the requisite number of jobs within the two and a half year period following adjudication of the petition as is required by 8 C.F.R. § 201.6(j)(4). The denial letter notes that Doe's own assertion projected completion of the project in April 2016, almost four years after the date she provided in the initial 2011 Business Plan that accompanied her petition. The denial concludes: "In spite of the evidence provided, due to the number of construction delays in the Project from the time the petition was submitted, USCIS cannot determine that [petitioner] has demonstrated by a preponderance of the evidence that the requisite jobs will be created within the two and a half year period following adjudication of the petition."

The instant law suit followed. Doe alleges that the agency decision to deny her visa petition is arbitrary and capricious. She further alleges that USCIS exceeded its statutory authority and violated Doe's procedural due process rights. The parties filed cross-motions for summary judgment.

**Legal Standard**

The Administrative Procedures Act authorizes judicial review of certain final agency actions, but review is limited. Instead of the usual summary judgment standard, the court must determine as a matter of law whether the evidence in the administrative record permitted the agency to make the agency to make the decision it did. *See Smith v Office of Civilian Health & Med. Program of the Uniformed Services,* 97 F.3d 950, 954-55 (7th Cir. 1996). A court may hold set aside a final agency action only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or unsupported by substantial evidence. *See* 5 U.S.C. § 706(2)(A)-(E). The scope of judicial review in this context is narrow and gives deference to the agency decision. In this circuit, the agency's decision "need not be compelling, or even convincing, to be sufficient; that the decision is reasoned is sufficient." *Ghaly v. Immigration and Naturalization Serv.*, 48 F. 3d 1426, 1431 (7th Cir. 1995) (internal quotations omitted). A reviewing court must uphold the agency's decision unless it "was made without a rational explanation, inexplicably departed from established policies or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* Judicial review is limited to the administrative record on which the challenged agency action was based. 5 U.S.C. § 706.

**Discussion**

Doe argues that this Court should reverse the denial of I-526 petition and enter judgment in her favor because the agency decision was arbitrary and capricious in violation of her rights. She

asserts that the agency ignored credible evidence supporting her petition, including a comprehensive business plan as required by 8 C.F.R. § 204.6(j)(4)(i)(B) with approximate dates for creation of the ten qualifying jobs. Doe contends the agency should not have considered the delay in construction a material change to the facts supporting her petition since there was no guidance for her disclosing that a delay in the approximate dates in a business plan would affect the credibility of the entire business plan.

Since Doe's investment had not created 10 full-time qualifying jobs by the time she submitted her I-526 petition, she was required to provide a comprehensive business plan "showing that, due to the nature and projected size of the new commercial enterprise, the need for not fewer than ten (10) qualifying employees will result, including approximate dates, within the next two years." 8 C.F.R. § 204.6(j)(4)(B). In order to meet this requirement the business plan must be credible. *Matter of Ho,* 22 I. & N. Dec. 206 (Assoc. Comm. 1998). All that is required of the agency is merely that it considers "the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Ghaly*, 48 F.3d at 1433 (quoting *Vergara-Molina v. INS*, 956 F.2d 682, 685 (7th Cir. 1992).

The record indicates that USCIS clearly did more than merely react to the petition. In its decision, the agency enumerates the record evidence on which it relied and considered Doe's stated reasons for delay in the project, including the City of Elgin's "dilatory approval process for new developments," the particularly harsh winters and below-normal temperatures, and the long processing time for I-526 petitions. The agency found these explanations insufficient to overcome its determination that the nearly four year delay in estimated completion of the project undermined the credibility of the original business plan and economic analysis. This Court is not in a position to reweigh the evidence that the agency had at its disposal.

8

In order to satisfy the statutory job creation requirements EALEF's loan to Elgin Memory Care must result in the creation of at least 240 jobs (24 investors at 10 jobs each). 8 C.F.R. § 204.6(g)(l). The 2011 Business Plan originally provided by Doe projected only 87 jobs by the end of the third year of operation.[1] This plan was premised on a 2012 completion date so the third year of operation would be 2015. The 2012 Business Plan projected the opening date in 2014, but as of March 2015, Elgin Memory Care had not even begun to build the facility. Even though the construction timeline provided in the 2012 Business Plan projected work on the foundation to begin by March 30, 2015, the City of Elgin had not even issued permits as of April 9, 2015. As the court in *Soltane v. U.S. DOJ*, 381 F.3d 143, 151-152 (3d Cir. 2004), stated:

> An agency's rejection of uncontradicted testimony can support a finding of substantial evidence. However, an agency is generally under at least a minimal obligation to provide adequate reasons explaining why it has rejected uncontradicted evidence. For example, if the [agency] ruling was based on a determination that [petitioner's] assertions were not credible, then there should have been some sort of finding regarding credibility, either explicit or implicit.

381 F.3d 143, 151-152 (3d Cir. 2004).

Here, the agency specifically referenced the updated timelines, but found that despite this evidence the number of construction delays in the project meant that USCIS could not determine that Doe had met her burden to show the requisite number of jobs will be created within two and half years of adjudication. Based on this record, USCIS presented a reasoned decision. More is not required.

Doe further argues that USCIS violated her procedural due process rights and failed to give adequate deference to previously adjudicated petitions. However, "[t]his Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."

---

[1] The 2011 Business Plan called for 37 new jobs the first year, an additional 73 the next year, and a further 87 the third year. It is unclear whether the Plan was for a total of 307 jobs or whether it would be a total of 87 by the end of the third year. It appears to be the latter – 87 jobs by the end of year three. Certified Administrative Record, Dkt. 24-3 at p. 49.

9

*Landon v. Plasencia,* 459 U.S. 21, 32 (1982). The Immigration and Naturalization Act does not provide any procedural protections in the adjudication of a visa petition. 8 U.S.C. § 1154(b). The Administrative Procedures Act only requires that USCIS provide a brief statement of the grounds for denial, which it did. *See* 5 U.S.C. § 555(e).

The administrative record demonstrates that USCIS provided her with written notice of its intent to deny her I-526 petition with its reasons for intending to deny the petition. USCIS then gave Doe the opportunity to submit additional documentation and argument in support of her petition, which she did. The final decision of the agency listed all the evidence that it considered and concluded based on the documentation that the lengthy delays in construction rendered the business plans and timelines unreliable since none of the benchmarks had been met. Moreover, Doe had no right to rely on the fact that the agency had approved other I-526 petitions by other EALEF investors. The agency is not bound by prior adjudications when it is presented with new facts. *See Matter of Izummi,* 22 I. & N. Dec. 169, 190-91 (Comm'r 1998); *Leal-Rodriguez v. INS,* 990 F.2d 939, 946 (7th Cir. 1993).

Based on the foregoing discussion, this Court finds that USCIS did not act arbitrarily or capriciously when it denied Doe's I-526 petition for an EB-5 visa. Accordingly, this Court grants defendant's motion for summary judgment [36] and denies plaintiff's motion for summary judgment [37].

IT IS SO ORDERED.

ENTERED:

Dated: February 28, 2017

SHARON JOHNSON COLEMAN
United States District Judge